IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WOLFGANG M. VON VADER,

                      Petitioner,

v.

UNITED STATES OF AMERICA,

                      Respondent.

OPINION and ORDER

17-cv-931-jdp

---

In 2000, Wolfgang M. Von Vader pleaded guilty to distribution of methamphetamine. *United States v. Von Vader*, 99-cr-125-jdp. The sentencing judge found that Von Vader qualified as a career offender under the U.S. Sentencing Guidelines § 4B1.1 because he had two or more prior convictions for serious drug crimes or crimes of violence. Von Vader was sentenced to 270 months of imprisonment. He did not file a direct appeal or any motions for postconviction relief until he filed a motion to vacate his sentence under 28 U.S.C. § 2255 on December 11, 2017. In his § 2255 motion, Von Vader challenges the sentencing judge's determination that he was a career offender, arguing that he no longer has two prior convictions that satisfy § 4B1.1 in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). Unfortunately, Von Vader's § 2255 motion is untimely and he has not shown that he is entitled to equitable tolling. Therefore, I must dismiss the motion.

ANALYSIS

To qualify as a career offender under § 4B1.1 of the Sentencing Guidelines, a defendant must have at least two prior felony convictions of either a crime of violence or a controlled substance offense. Von Vader's presentence investigation report identified three prior felony

convictions for purposes of § 4B1.1: (1) a 1988 Texas conviction for delivery of a controlled substance; (2) a 1991 Wisconsin conviction for battery; and (3) a 1994 Minnesota conviction for terroristic threats. The sentencing court concluded that the Texas drug conviction qualified as a "controlled substance" offense under § 4B1.2(b), and that the battery and terroristic threats convictions were "crimes of violence."

At the time Von Vader was sentenced, "crime of violence" was defined as including any offense that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" [the force clause]; or (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives [the enumerated crimes clause], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the residual clause]." U.S.S.G. § 4B1.2 (2000). The sentencing judge did not specify whether Von Vader's battery and terroristic threat convictions qualified as "crimes of violence" under the "residual clause" or the "force clause."

Von Vader would not qualify as a career offender under § 4B1.1 if he were being sentenced today. Von Vader's Wisconsin battery conviction would still qualify as a predicate offense under the "force clause" of § 4B1.2(a)(1). *Yang v. United States*, 842 F.3d 1051, 1052 (7th Cir. 2016) (holding that prior conviction for battery under Wisconsin statute had as an element the use, attempted use, or threatened use of physical force against person of another). However, in light of several recent court decisions, his drug conviction and terroristic threat convictions would no longer count as predicate offenses for purposes of § 4B1.1. *See United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) (Texas conviction for delivery of a controlled substance does not qualify as a "controlled substance" offense under the Sentencing

2

Guidelines); *United States v. McFee*, 842 F.3d 572 (8th Cir. 2016) (Minnesota conviction for terroristic threats not a crime of violence).

The question before this court is whether Von Vader can take advantage of these recent court decisions to obtain resentencing under § 2255. Ordinarily, a prisoner must file a § 2255 motion within one year of sentencing. 28 U.S.C. § 2255(f)(1). But the one-year clock restarts when the Supreme Court newly recognizes a right and its decision applies retroactively to cases on collateral review. *Id.* § 2255(f)(3). Von Vader contends that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), reset his § 2255 clock. In *Johnson*, the Supreme Court held that the "residual clause" in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B), violated the Due Process Clause of the Fifth Amendment. The residual clause of the ACCA, which imposed increased minimum and maximum sentences, used identical language to that employed in the guidelines.

The government argues that *Johnson* does not help Von Vader for three reasons: (1) *Johnson* does not apply to Von Vader's guidelines sentence; (2) Von Vader has failed to identify any *Johnson* errors in his career-offender designation; and (3) Von Vader's motion is untimely. I address each of the government's arguments below.

## A. Applicability of *Johnson* to pre-*Booker* guidelines sentences

The government argues that *Johnson* does not apply to Von Vader's sentence because he was sentenced as a career offender under the Sentencing Guidelines, not under the ACCA. However, since the government filed its opposition brief, the Court of Appeals for the Seventh Circuit has determined that *Johnson* applies to inmates who received guidelines sentences before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), in which the Supreme Court held that the Sentencing Guidelines were discretionary, not mandatory.

3

*See Cross v. United States*, 892 F.3d 288 (7th Cir. 2018). Because Von Vader was sentenced in 2000, at a time when the Sentencing Guidelines were understood to be mandatory, *Johnson* applies to his guidelines sentence.

**B. Invalidity of Von Vader's career-offender designation under *Johnson* and *Mathis***

The government's second argument is that *Johnson* is irrelevant to Von Vader's sentence because his prior convictions for delivery of a controlled substance and terroristic threats were not found to be predicate offenses under the "residual clause" of § 4B1.2. Instead, those convictions qualified as predicate offenses under the "controlled substance" and "force" clauses. The government argues that because Von Vader has not identified a *Johnson* error under the residual clause, he cannot rely on *Johnson* to invalidate his sentence or to restart his § 2255 clock.

The government's argument is valid, but only to a point. It is clear that *Johnson* would have no effect on Von Vader's Texas drug conviction. The Court of Appeals for the Fifth Circuit concluded in *Hinkle*, 832 F.3d 569, that a Texas conviction for delivery of a controlled substance cannot be a predicate offense under the career offender guidelines. But that decision was based on the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016). Specifically, the Fifth Circuit concluded that because the Texas statute criminalizes conduct that falls outside the definition of "controlled substance offense" in the guidelines, the Texas offense could not serve as a predicate offense under the guidelines. *Id.* at 576. The *Johnson* decision invalidating the residual clause played no role in *Hinkle*.

However, *Johnson* may apply to Von Vader's terroristic threats conviction. The Court of Appeals for the Eighth Circuit's decision in *McFee*, 842 F.3d 572, that a Minnesota terroristic threats conviction is not a crime of violence, was also based on *Mathis*, not *Johnson*. The

4

government points out that before *McFee*, Eighth Circuit law assumed terroristic threats offenses were violent crimes under the "force clause" of the ACCA and guidelines. *See, e.g., United States v. Sanchez-Martinez*, 633 F.3d 658, 660 (8th Cir. 2011); *United States v. Clinkscale*, 559 F.3d 815, 817 (8th Cir. 2009); *United States v. Flannigan*, 367 Fed. App'x 732, 733 (8th Cir. 2010). In *McFee*, the Eighth Circuit determined that, in light of *Mathis*, the terroristic threats statute is overbroad but not divisible and cannot serve as a predicate conviction under the "force clause." *McFee*, 842 F.3d at 575. The government argues that Von Vader's sentencing judge also relied on the "force clause" in concluding that terroristic threats qualified as a crime of violence and that, because *Johnson* did not affect the "force clause," Von Vader has failed to identify a *Johnson* error.

The sentencing judge did not state whether Von Vader's terroristic threats conviction qualified as a predicate offense under the force clause or residual clause. But even if the judge had relied on the force clause, Von Vader's *Johnson*-based claim would not necessarily be foreclosed. The Seventh Circuit has pointed out that if a criminal defendant decided not to press an argument about the force clause at his original sentencing or on appeal because "the only consequence would have been to move a conviction from the [force] clause to the residual clause," the defendant can still bring a *Johnson* claim. *Cross v. United States*, 892 F.3d 288, 298 (7th Cir. 2018). In other words, if Von Vader's terroristic threats conviction would have qualified as a crime of violence under both the force clause and residual clause at the time of his sentencing, he has a *Johnson* claim.

Moreover, even if Von Vader's arguments arise from *Mathis*, rather than *Johnson*, Von Vader could rely on *Mathis* to restart his § 2255 clock under § 2255(f)(3). *Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016) (noting that "substantive decisions such as *Mathis*

5

presumptively apply retroactively on collateral review," and that defendant could raise *Mathis* claim in "an initial collateral attack"). Therefore, Von Vader's reliance on *Mathis*-based decisions, including *McFee*, 842 F.3d 572, and *Hinkle*, 832 F.3d 569, does not doom his motion.

## C. Timeliness and equitable tolling

Regardless whether Von Vader is relying on *Johnson* or *Mathis*, it is clear that his § 2255 motion is untimely under § 2255(f)(3). Von Vader filed his motion on December 11, 2017, more than a year after the Supreme Court's decisions in *Johnson* (June 26, 2015) and *Mathis* (June 23, 2016). Von Vader concedes that his motion is untimely, but he argues that he is entitled to equitable tolling.

Section 2255's statute of limitations is not jurisdictional and can be equitably tolled. *Holland v. Florida*, 560 U.S. 631, 645, 649 (2010); *Estremera v. United States*, 724 F.3d 773, 775 (7th Cir. 2013) (applying *Holland* to a § 2255 petition). To qualify for equitable tolling, a petitioner must demonstrate (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649; *Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018). A petitioner bears the burden of establishing both elements of the *Holland* test, and failure to show either element disqualifies him from eligibility for tolling. *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755–56 (2016). Equitable tolling is rare and "reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing." *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016); *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014).

Von Vader contends that he has been pursuing his rights diligently and that extraordinary circumstances prevented his timely filing. In particular, he states that he did not

learn about the *Johnson* decision until approximately May 2016, when other inmates started receiving letters from their attorneys about *Johnson*. Dkt. 9 at 5. Von Vader states that he could not have learned about *Johnson* before May 2016 because he was housed in a special management unit between May 2015 and February 2017, and there were no law libraries. He states that the only "library" consisted of an empty cell where inmates could check out fiction books, get a haircut, use fingernail clippers, and use a computer to check their commissary accounts. *Id.* at 2–4. Von Vader says that although inmates may have been able to access a "criminal law reporter" through the computer, he did not know how to access the "legal stuff" and there was no one available that could have helped him. *Id.* at 4.

During the summer of 2016, after Von Vader learned about *Johnson* from other inmates, he sent several letters to the lawyer who had represented him at sentencing asking whether *Johnson* might apply to his guidelines sentence. *Id.* at 5–6. He was not sure whether he could make a *Johnson* argument because he had not been sentenced under the ACCA. *Id.* Von Vader also reached out to his sister for help, and his sister tried on several occasions to contact Von Vader's lawyer or the federal defender's office for assistance. *Id.* Von Vader's former counsel did not respond to him until November 2017, when he wrote to Von Vader to say that he was no longer practicing federal law. Dkt. 1 at 17. During this time, Von Vader did have not access to his legal property for several months. Dkt. 9 at 10. Von Vader filed his § 2255 motion on December 11, 2017.

The gist of Von Vader's equitable tolling argument is that he did not learn about *Johnson* until his deadline for filing a § 2255 motion had nearly expired and then, after he learned about *Johnson*, he did not file a motion right away because he was not sure whether *Johnson* applied to his sentence. As discussed above, Von Vader's challenge to his career offender designation is

7

based on both *Johnson* and *Mathis*. Von Vader does not say when he first learned about *Mathis* or why he did not raise his *Mathis* challenge within a year of the *Mathis* decision. From Von Vader's statements, I assume that Von Vader did not file his § 2255 motion within a year of *Mathis* for the same reasons he waited to file his *Johnson* challenges. In particular, Von Vader likely did not learn about *Mathis* until several months after the decision was issued and likely was not sure whether or how the decision applied to his sentence. But even if I accept all of Von Vader's factual allegations as true and make assumptions in his favor, he has not shown that he is entitled to equitable tolling.

"Equitable tolling excuses an untimely filing when, despite exercising reasonable diligence, a petitioner could not have learned the information he needed in order to file on time." *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006). The "inability to access vital papers" may justify equitable tolling. *Schmid v. McCauley*, 825 F.3d 348, 350 (7th Cir. 2016). Von Vader has not shown that it would have been impossible for him to learn about *Johnson* or *Mathis*. Nor does he say he needed specific materials from his lawyer before he could file his own motion. *See Socha*, 763 F.3d at 686 (equitable tolling justified where lawyer withheld materials petitioner needed to file habeas petition). Although Von Vader says he did not know how to consult the legal resources available on the prison computer, he does not allege that ever tried to do so. His ignorance of the computer resources does not amount to an extraordinary circumstance beyond his control. *See id.* at 685 ("lack of representation," "lack of legal training"' and "lack of legal knowledge" are not enough to justify equitable tolling); *United States v. Nelson*, No. 03-CR-175-BBC, 2010 WL 4806976, at *4 (W.D. Wis. Nov. 22, 2010) ("As unfair as it may seem to a prisoner presumably unaccustomed to consulting legal

8

materials on a regular basis, it is the law that he must show that he has pursued his rights diligently before he can claim any entitlement to equitable tolling.").

But even if Von Vader's time in the special management unit explains his delay to February 2017, he waited several more months to file his motion. Von Vader's decision to wait more than a year after learning of *Johnson* to file his § 2255 motion, and to wait several months after his deadline to raise a *Mathis* challenge had expired, is not justified. Although Von Vader was not sure whether *Johnson* applied to his sentence, "[m]istakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling." *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006). Von Vader did not want to proceed without advice from his former attorney. But Von Vader's general lack of legal knowledge and reluctance to proceed on his own do not demonstrate "extraordinary circumstances" that prevented him from pursuing a *Johnson* or *Mathis* claim on his own. His reluctance to proceed on his own is understandable, but it does not justify tolling the limitations period.

Von Vader has identified no other facts that would entitled him to equitable tolling. Therefore, I must dismiss his § 2255 motion as untimely.

## D. Certificate of appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or deny a certificate of appealability when entering a final order. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that Von Vader's motion under 28 U.S.C. § 2255 is untimely. Because reasonable jurists would not debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that:

1. Petitioner Wolfgang M. Von Vader's motion for postconviction relief under 28 U.S.C. § 2255, Dkt. 1, is DENIED.

2. Von Vader is DENIED a certificate of appealability. He may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered December 6, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge